**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
PAULA J. CHAUSSEE            :    Civ. No. 3:14CV00905(SALM)
                             :
v.                           :
                             :
CAROLYN W. COLVIN,          :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :    August 24, 2015
                             :
-----------------------------x
```

<u>**RECOMMENDED RULING ON CROSS MOTIONS**</u>

Plaintiff Paula Chaussee brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff has moved for judgment on the pleadings to reverse and/or remand the Commissioner's decision. [Doc. #14].

For the reasons that follow, plaintiff's motion for judgment on the pleadings [**Doc. #14**] is **GRANTED**. Defendant's motion to affirm [**Doc. #19**] is **DENIED**. This matter is remanded to the Commissioner for further proceedings consistent with this Ruling.

**I.    PROCEDURAL HISTORY**

The parties do not dispute this matter's procedural

history. Plaintiff filed concurrent applications for DIB and SSI on March 1, 2011, alleging disability beginning August 1, 2009. (Certified Transcript of the Record, Compiled on August 26, 2014 (hereinafter "Tr.") Tr. 230-45). Both applications were denied initially (Tr. 155-62), and on reconsideration (Tr. 166-73). Plaintiff then requested a hearing before an Administrative Law Judge, which the Social Security Administration acknowledged via letter dated February 3, 2012. (Tr. 174-83).

On February 1, 2013, Administrative Law Judge ("ALJ") Lisa Groeneveld-Meijer held a hearing at which plaintiff, appearing with counsel, testified. (Tr. 38-94, 184-88, 192-220, 224-29). Vocational Expert Elizabeth LaFlamme also testified. (Tr. 74-94). On February 22, 2013, the ALJ issued an unfavorable decision. (Tr. 12-37). On April 25, 2014, the Appeals Council denied plaintiff's request for review thereby making the ALJ's February 22, 2014 decision the final decision of the Commissioner. (Tr. 1-11). The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, filed this timely action for review and now moves to reverse and/or remand the Commissioner's decision. On appeal, plaintiff asserts that the ALJ erred in her application of the treating physician rule and

in her analysis of plaintiff's credibility. As further
articulated below, the Court finds that the ALJ erred in her
application of the treating physician rule.

## II.  STANDARD OF REVIEW

The scope of review of a social security disability
determination involves two levels of inquiry.  <u>First</u>, the court
must decide whether the Commissioner applied the correct legal
principles in making the determination.  <u>Second</u>, the court must
decide whether the determination is supported by substantial
evidence.  <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998).
**The Court does not reach the second stage of review – evaluating
whether substantial evidence supports the ALJ's conclusion – if
the Court determines that the ALJ failed to apply the law
correctly.**  "Where there is a reasonable basis for doubt whether
the ALJ applied correct legal principles, application of the
substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made
according to the correct legal principles."  <u>Johnson v. Bowen</u>,
817 F.2d 983, 986 (2d Cir. 1987).

Where the Court does reach the second step, to find
"substantial evidence" the Court must find evidence that a

reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971); Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998). "The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact." Gonzales v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998) (citation omitted). The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993) (citation omitted). The court's responsibility is to ensure that a claim has been fairly evaluated. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

To enable a reviewing court to decide whether the determination is supported by substantial evidence, the ALJ must set forth the crucial factors in any determination with sufficient specificity. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073 (JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations

4

omitted).

### III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, Ms. Chaussee must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).  Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A) (alterations added); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[ ]... physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled.  See 20 C.F.R. §404.1520. In the Second

Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam).  If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

Through the fourth step, "the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§416.945(a)(1), 404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.  THE ALJ'S DECISION

Following the above-described five step evaluation process,

7

ALJ Groeneveld-Meijer concluded that plaintiff was not disabled under the Social Security Act. (Tr. 32). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 1, 2009, the alleged onset date. (Tr. 18). At step two, the ALJ found that plaintiff had severe impairments of degenerative disk disease, mild distal axional sensory neuropathy, asthma, obesity, personality disorder, affective disorders and anxiety-related disorder. (Tr. 18).

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 19). The ALJ specifically considered listings 1.04 (disorders of the spine), 1.02 (major dysfunction of a joint), 11.00 et seq. (neurological disorders), 3.03 (asthma), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders). (Tr. 19). The ALJ also conducted a psychiatric review technique and found that plaintiff had mild restrictions in her activities of daily living, moderate difficulties in social functioning and concentration persistence or pace, and no episodes of extended duration decompensation. (Tr. 19-20). Before moving onto step four, the ALJ found plaintiff had the following residual

functional capacity ("RFC"):

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant is able to lift and carry twenty pounds frequently and ten pounds occasionally, with no climbing of ladders, ropes or scaffolds, occasional stooping, kneeling, crouching, crawling and balancing and occasional climbing of ramps/stairs. The claimant would require a sit/stand option, at will. She is further limited to frequent handling. The claimant should avoid exposure to potential hazards, such as moving machinery and unprotected heights. Due to her asthma, she should avoid concentrated exposure to respiratory irritants, such as fumes, odors, dusts, gases and poorly ventilated areas. The claimant is capable of performing routine work activity, with no contact with the general public, superficial and infrequent contact with others and no tandem tasks with others.

(Tr. 21). At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (Tr. 30). The ALJ then found at step five that there were other jobs that existed in significant numbers in the national economy that plaintiff could perform. (Tr. 30-32). Ultimately, the ALJ found plaintiff not disabled. (Tr. 32).

## V.   DISCUSSION

Plaintiff's argument that the ALJ erred in her application of the treating physician rule is two-fold. Plaintiff argues first that the ALJ's decision to reject her treating physicians' opinions is not supported by substantial evidence; and second,

that the ALJ failed to undertake the proper analysis in
determining the weight to accord these opinions. The
Commissioner argues that the ALJ properly weighed the treating
source evidence. The Court finds that the ALJ failed to provide
"good reasons" for rejecting and/or discounting the opinions of
plaintiff's medical sources.

With respect to the opinion evidence generally, the ALJ
stated:

> [T]he undersigned has considered the opinions of the
> State Agency consultants and assigns them equal weight
> insofar as they are consistent with the above-stated
> residual functional capacity. These opinions are
> generally consistent with one another and with the
> evidence of record, which reflect minimal objective
> findings and an ability to perform a reduced range of
> light work activity.
>
> The undersigned considered the mental health
> questionnaires submitted by Clinician Baldwin, co-
> signed by Dr. Bianco and Dr. Tek, which concluded that
> the claimant's ongoing mental health symptoms
> prevented her from performing work activity on a
> sustained basis (Exhibit 10F, 16F and 22F).
> Significantly, these opinions are not supported by
> clinical signs and findings, but appear to have been
> based solely on the claimant's subjective mental
> health complaints. Treatment notes reflect the
> claimant's mental health symptoms improved with
> treatment (Exhibit 22F). There was noted improvement
> in social isolation, generalized anxiety, hostility,
> irritability and energy level (Exhibit 22F/1-2).
> Further, it is noted that the claimant was not
> treating with medication or was noncompliant with her
> medications, at times (Exhibit 2F/6). Finally,
> treatment notes reflect increased mental health
> symptoms due to psychosocial stressors, including
> housing, financial and family conflicts (Exhibit

2F/3). In all, the evidence does not support a finding of disability due to mental health conditions, even with the claimant's reported pain complaints.

(Tr. 29).

### *A.* **Applicable Law**

As an initial matter the Court notes that the opinions at issue were each authored by licensed clinical social worker Jennifer Baldwin, although cosigned by a psychiatrist. See Tr. 550-53, 635-39, 957-61. As indicated, plaintiff appears to suggest that these are the opinions of her "treating physicians." Pursuant to 20 C.F.R. §404.1527(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. The applicable regulations "establish a hierarchy of acceptable medical source opinions" and further provide that "every medical source [opinion] received by the Commission[er] will be considered in evaluating a disability claim[.]" Godin v. Astrue, No. 3:11CV881(SRU), 2013 WL 1246791, at *2 (D. Conn. Mar. 27, 2013)(alterations added) (internal citation omitted). Generally, the most weight is afforded to the opinions of plaintiff's treating physician, with whom plaintiff has a direct and continuing relationship. See 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). Traditionally, only the opinions of "acceptable medical sources" were entitled to

controlling weight. See SSR 06-03p, 2006 WL 2329939, at *1
(S.S.A. Aug. 9, 2006); Malloy v. Astrue, No.
3:10CV190(MRK)(WIG), 2010 WL 7865083, at *21 (D. Conn. Nov. 17,
2010). "Only licensed physicians, licensed osteopaths, licensed
or certified psychologists, licensed optometrists, licensed
podiatrists, and qualified speech-language pathologists are
considered 'acceptable sources of medical information.'" Malloy,
2010 WL 78685083, at *21. Licensed clinical social workers,
nurse practitioners and other similar medical providers are not
considered "acceptable medical sources" under the regulations,
but rather, are considered "other sources." See 20 C.F.R.
§§404.1513(d)(1), 416.913(d)(1). "Therefore, while the ALJ is
certainly free to consider the opinions of these 'other sources'
in making his overall assessment of a claimant's impairments and
residual abilities, those opinions do not demand the same
deference as those of a treating physician." Grenier v. Astrue,
298 F. App'x 105, 108 (2d Cir. 2008)(summary order)(citing
Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983)).
Nevertheless,

> [w]ith the growth of managed health care in recent
> years and the emphasis on containing medical costs,
> medical sources who are not "acceptable medical
> sources," such as ... licensed clinical social
> workers, have increasingly assumed a greater
> percentage of the treatment and evaluation functions
> previously handled primarily by physicians and

> psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence of file.

SSR 06-03p, 2006 WL 2329939, at *3.

The regulations provide the factors which an ALJ must consider when evaluating opinions from acceptable medical sources. See 20 C.F.R. §§404.1527(c), 416.927(c). "Although the factors in 20 C.F.R. [§§]404.1527[c] and 416.927[c] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" SSR 06-03p, 2006 WL 2329939, at *4. These factors include: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise; and any other factors that tend to support or refute the opinion. Id. at *4-5; see also Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)(per curiam)(citation omitted) (setting forth the factors an ALJ must consider when evaluating opinion evidence). After considering these factors, the ALJ must "give good reasons" for the weight –

13

or lack thereof – he or she affords to the treating source's opinion. Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)(quotation marks and citation omitted). "Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Id. at 129–30 (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)).

### *B.* **Analysis**

The Court initially notes that the ALJ failed to explicitly state the weight she assigned to the medical opinions at issue. Rather, the ALJ stated that "these opinions are not supported by clinical signs and findings, but appear to have been based solely on the claimant's subjective mental health complaints." (Tr. 29). This statement ignores the "inherent subjectivity of a psychiatric diagnosis," Velazquez v. Barnhart, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007), and is an erroneous basis upon which to reject or otherwise discount the opinions of Ms. Baldwin, which were each cosigned by a psychiatrist. Indeed, it has been stated that, "an opinion of a treating psychiatrist is inherently more reliable than an opinion of a consultant based on a review of a cold record because observation of the patient is critical to understanding the subjective nature of the

14

patient's disease and in making a reasoned diagnosis." <u>Rodriguez
v. Astrue</u>, No. 07 Civ. 534(WHP)(MHD), 2009 WL 637154, at *26
(S.D.N.Y. Mar. 9, 2009)(emphasis added)(citation and internal
quotation marks omitted). Accordingly, discounting the opinions
of plaintiff's mental health clinician because they are based on
"claimant's subjective mental health complaints" (Tr. 29),
disregards the fundamentals of mental health treatment and
diagnosis. Indeed, "[t]o allow an ALJ to discredit a mental
health professional's opinion solely because it is based to a
significant degree on a patient's 'subjective allegations' is to
allow an end-run around our rules for evaluating medical
opinions for the entire category of psychological disorders."
<u>Ferrando v. Comm'r of Soc. Sec. Admin.</u>, 449 F. App'x 610, 612
n.2 (9th Cir. 2011).

　　　Moreover, the ALJ's conclusion that these opinions "appear
to have been based solely on plaintiff's subjective mental
health complaints" (Tr. 29), is unsupported by the record.
Between February 10, 2011, and November 28, 2012, Ms. Baldwin
personally observed and interviewed plaintiff, conducted mental
status examinations of plaintiff, and oversaw group therapy
sessions in which plaintiff participated, <u>nearly 80 times</u>. <u>See</u>
Tr. 413-14, 458-65, 467-68, 498, 501-05, 507-16, 519-34, 745-

800, 806-19, 841-48, 851-52, 854-68, 893, 897, 899-901, 904-07, 909, 914, 917, 919-21, 925, 929-37. Additionally, between December 2011 and September 2012, Dr. Tek, who cosigned the June 2012 and January 2013 opinions, personally observed and interviewed plaintiff, conducted mental status examinations, and monitored her response to several different psychotropic medications at least seven times. <u>See</u> Tr. 493, 837-40, 895-96, 902-03, 910-11, 927-28. Plaintiff consistently described symptoms of anxiety, irritability, depression, mood swings, and sleep and energy disturbances. (Tr. 458, 498, 505, 507, 510, 513, 745, 748, 756, 760, 770, 904, 914, 931, 937). Mental status examination findings consistently noted plaintiff's constricted affect (Tr. 464, 745, 747, 758, 760, 902, 931), depressed, anxious and/or irritable mood (Tr. 464, 498, 507, 510, 515, 528, 745, 747, 751, 753, 758, 760, 770, 897, 899, 902, 904, 914, 931), and sleep and energy disturbances (Tr. 464, 493, 498, 505, 510, 513, 522, 524, 745, 751, 753, 756, 760, 897, 899, 902, 914, 931, 937). It was not improper for Ms. Baldwin to base her opinions on plaintiff's subjective symptoms in conjunction with her clinical observations and mental health status examination findings in light of the "inherent subjectivity of a psychiatric diagnosis." <u>Carton v. Colvin</u>, No. 3:13CV379(CSH), 2014 WL

16

108597, at *15 (D. Conn. Jan. 9, 2014) ("[T]he inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the claimant." (citing Bethea v. Astrue, 3:10CV744(JCH), 2011 WL 977062, at *11 (D. Conn. Mar. 17, 2011))). Ms. Baldwin had ample opportunity to evaluate the credibility of plaintiff's subjective symptoms, and she found those symptoms sufficiently credible to support the medical opinions regarding plaintiff's ability to perform work activities on a sustained basis. See, e.g., Tr. 636, 958 (noting plaintiff is not a malingerer). Moreover, "subjective complaints may themselves constitute an objective medical sign when properly used as a diagnostic technique." Regan v. Astrue, No. 09 Civ. 2777(BMC), 2010 WL 1459194, at *11 (E.D.N.Y. Apr. 12, 2010)(citing Burgess, 537 F.3d at 128). Indeed, similar to the circumstances presented here, the Regan court found that an ALJ erred by rejecting plaintiff's treating source opinions regarding her mental health impairments because

> the ALJ stated that controlling weight would not be granted to the opinions of plaintiff's treating sources [where] those opinions were "based on subjective complaints and not clinical findings consistent with laboratory and diagnostic tests." However, plaintiff's treating sources' opinions were based on the sorts of observable medical signs and symptoms well-accepted within their field of expertise, including tests of plaintiff's psychomotor activity, observation of her appearance, affect and mood, and evaluation of her insight, judgment and

17

cognitive functioning.

Regan, 2010 WL 1459194, at *11. Like in Regan, and as detailed above, Ms. Baldwin's opinions were based on "observable medical signs and symptoms well-accepted within [her] field of expertise," including "observation of [plaintiff's] appearance, affect and mood, and evaluation of her insight, judgment and cognitive functioning." Id. Accordingly, the Court finds that it was not a "good reason" to discount or otherwise reject Ms. Baldwin's opinions because they were based "solely" on plaintiff's "subjective complaints." (Tr. 29).

The ALJ next discounted Ms. Baldwin's opinions on the basis that plaintiff's mental health symptoms improved with treatment, and that "[t]here was noted improvement in social isolation, generalized anxiety, hostility, irritability and energy level." (Tr. 29). In support of this statement, the ALJ cited to Ms. Baldwin's January 2013 opinion, which noted some improvement in plaintiff's social withdrawal or isolation, energy levels, intrusive recollections of a traumatic experience, generalized persistent anxiety, and irritability. (Tr. 957-58). However, the ALJ failed to note other relevant portions of the opinion, for example that:

> [Plaintiff] [p]resents with mood disturbance, anxiety,
> periods of insomnia, trauma related sx at times
> exacerbated/triggered by stressors, impacting her

18

ability to manage on a daily basis. She has
demonstrated improvement in stability of mood with
medication compliance and use of adaptive coping
skills.

Making good progress towards treatment goals, responds
well to medications and supportive psychotherapy,
effectively using adaptive coping skills.

[After opining that plaintiff would have difficulty
working at a regular job on a sustained basis, the
opinion states,] At present – client continues to
present with sleep and mood disturbance though has
been improving. She requires structure, supportive
environment to manage daily stressors – working on
adjusting to independent living.

(Tr. 957-60). Placing dispositive weight on the fact that

plaintiff improved ignores the cyclical nature of plaintiff's

mental illness, which is well documented in her medical records

preceding the January 2013 opinion. (Tr. 921-37). Further, the

fact that plaintiff had "improved" does not mean that the

plaintiff has <u>recovered</u> or is otherwise functionally capable of

sustained gainful employment. <u>See, e.g.</u>, Tr. 921 (August 27,

2012, clinical progress note reporting plaintiff's feeling angry

and upset about disclosure of daughter's molestation, and

exhibiting self-blame, anger and depression, as well as "passive

[homicidal intent] towards past perpetrators"); Tr. 925 (On

September 5, 2012, plaintiff denied depression, mania, and

reported sleeping well.); Tr. 927 (On September 14, 2012,

plaintiff complained of poor sleep, severe anxiety and memory

19

problems; Dr. Tek further noted that plaintiff "has been more anxious than her baseline."); Tr. 931 (On September 26, 2012, plaintiff reported feeling more stress and depression and the clinician noted that she "presents overwhelmed with stressors and recent triggers in group around trauma history, which is likely why she is more depressed. [Plaintiff] requires more support during this time."); Tr. 933 (October 18, 2012, clinical progress note stating that "plaintiff has been more depressed, isolating and not keeping therapy appointments because of frustrations with move."); Tr. 935 (November 15, 2012, clinical progress note indicating that plaintiff reported feeling generally well and that "[o]verall, doing much better."); Tr. 937 (November 28, 2012, clinical progress note indicating that plaintiff reported difficulty sleeping through the night and experiencing more depression around the holidays.). Accordingly, plaintiff's alleged improvement is not a "good reason" for discounting the opinions of Ms. Baldwin in light of the well-documented cyclical nature of plaintiff's mental illness.

The ALJ next stated: "[I]t is noted that the claimant was not treating with medication or was noncompliant with her medications, at times (Exhibit 2F/6)." (Tr. 29). The ALJ failed to note, however, that plaintiff's limited period of non-

treatment and/or noncompliance was the result of her
unemployment, lack of insurance and income, and/or homelessness.
(Tr. 409, 558, 561, 572). "The law is clear ... that an ALJ may
not draw negative inferences from a claimant's lack of treatment
without considering any explanations the claimant may provide."
Campbell v. Astrue, 596 F. Supp. 2d 446, 454 (D. Conn. 2009)
(citing SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996)). To the
extent the ALJ drew a negative inference from plaintiff's non-
treatment or noncompliance, it was error to do so where it is
not apparent the ALJ considered any explanation for this
conduct. See Schlichting v. Astrue, 11 F. Supp. 3d 190, 207
(N.D.N.Y. 2012) ("[A]n ALJ must not draw an adverse inference
from a claimant's failure to seek or pursue treatment 'without
first considering any explanations that the individual may
provide, or other information in the case record, that may
explain infrequent or irregular medical visits or failure to
seek medical treatment.'" (quoting SSR 96-7p, 1996 WL 374186)).
Additionally, the ALJ failed to address the fact that once
plaintiff's benefits were reinstated, substantial evidence of
record reflects plaintiff's consistent treatment and medication
compliance over a significant period of time. See generally Tr.
495, 498-549, 743-942 (clinical progress notes and medication

management notes of Ms. Baldwin and Dr. Tek reflecting that
plaintiff was compliant with her medications). Accordingly, the
Court finds the ALJ erred by discounting and/or rejecting Ms.
Baldwin's opinions in light of the explanation for plaintiff's
limited noncompliance and/or non-treatment.

Finally, the ALJ stated that "treatment notes reflect
increased mental health symptoms due to psychosocial stressors,
including housing, financial and family conflicts." (Tr. 29).
Although treatment notes report plaintiff's mental health
symptoms sometimes increasing due to psychosocial stressors, it
is unclear how this impacted the ALJ's evaluation of the opinion
evidence. Indeed, it is entirely unclear from the ALJ's opinion
whether she conducted the appropriate analysis in weighing this
evidence because she did not address how much weight, if any,
was given to Ms. Baldwin's opinions, nor did she explicitly
analyze the factors required under the regulations and the
social security rulings interpreting those regulations.

As previously noted, the ALJ declined to address how much
weight, if any, was given to the opinions authored by Ms.
Baldwin, and cosigned by Drs. Tek and Bianco.[1] Moreover, the ALJ

---

[1] To the extent defendant argues that the ALJ accepted some of
the limitations ascribed by Ms. Baldwin, see Doc. #19, at p. 9,
this is unclear from the ALJ's decision. Furthermore, if she did
accept such limitations, she failed to explain why she accepted

failed to consider the factors required by the regulations, including the frequency, length, nature, and extent of treatment with Ms. Baldwin, the consistency of Ms. Baldwin's opinions with the remaining medical evidence, and how well Ms. Baldwin explains her opinions. For example, a Psychosocial Re-Assessment conducted on April 6, 2011, by a clinician at Continuum, noted plaintiff's "current" depression, sleep disturbance and anxiety. (Tr. 710). Similarly, a mental status examination conducted on February 23, 2011, by PA-C Izabella Ostolski, noted plaintiff's depressed and anxious mood, and sleep and energy disturbances. (Tr. 803). The ALJ also failed to account for the general consistency among Ms. Baldwin's three opinions, which span the course of nearly eighteen months. Although the opinions do reflect some improvement in plaintiff's functional limitations, they are generally consistent with respect to plaintiff's diagnoses, signs and symptoms, clinical findings, opinions regarding plaintiff's ability to work on a sustained basis, and the amount of days per month plaintiff would be absent from her work as a result of her disability. See generally Tr. 550-53, 635-39, and 957-61. The ALJ also did not consider the lengths to which Ms. Baldwin went to explain her opinions. Indeed, in each of her three opinions, Ms. Baldwin generally provided an

---

some portions of the opinion and rejected others.

explanation when prompted to do so. <u>See</u> SSR 06-03p, 2006 WL 2329939, at *4 (noting the factors an ALJ should consider when weighing medical opinions, including "[h]ow well the source explains the opinion[.]").

Accordingly, for these reasons, and the reasons set forth above, the Court finds that the ALJ failed to provide "good reasons" for the weight she did (or did not) afford to Ms. Baldwin's opinions. Therefore, remand is appropriate. <u>See, e.g.,</u> <u>Regan</u>, 2010 WL 1459194, at *12 (finding ALJ's failure to explain how much weight was given to treating source's opinion constituted proper grounds for remand (citing <u>Hatch v. Astrue</u>, No. 07CV2517(ENV), 2010 WL 1169926, at *11 (E.D.N.Y. Mar. 23, 2010))).

In light of this finding, the Court need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. On remand the Commissioner will address the other claims of error not discussed herein. Additionally, to the extent that the ALJ's credibility and RFC determinations relied on evidence on which she placed improper weight, the ALJ should reconsider the weight placed on

such evidence on remand.[2]

Finally, the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to permit the ALJ to reweigh the medical opinion evidence and reevaluate plaintiff's credibility and RFC.

**VI.   CONCLUSION**

For the reasons stated, plaintiff's motion for judgment on the pleadings [**Doc. #14**] is **GRANTED.**  Defendant's motion to affirm [**Doc. #19**] is **DENIED.**

---

[2] On remand, the ALJ should also address the import, if any, that the co-signatures of Drs. Tek and Bianco have on the weight afforded to Ms. Baldwin's opinions. As Chief Judge Hall previously recognized, "there is some dispute about whether a physician's cosigning something ipso facto imparts more weight to it[.]" Perez v. Colvin, Civil Action No. 3:13CV868(JCH), 2014 WL 4852848, at *4 (D. Conn. Sept. 29, 2014) (citations omitted). Often, whether a co-signer's signature imparts more weight to a non-acceptable source's opinion will depend on whether the opinions in the medical report are based on the co-signing doctor's examinations. See id. Here, the record indicates that Dr. Tek did examine plaintiff on multiple occasions and the opinions in at least two of Ms. Baldwin's reports may in fact rely in part on those examinations. However, the Court need not reach this issue in light of the fact that the ALJ did not explicitly address the weight afforded to these opinions and moreover, to the extent that these opinions were discounted, failed to provide "good reasons" supporting her decision to do so. Nevertheless, on remand, the ALJ will consider whether additional, or even controlling weight, should be afforded to Ms. Baldwin's opinions in light of the psychiatrists' co-signatures.

This is a Recommended Ruling.  See Fed. R. Civ. P. 72(b)(1).
Any objections to this recommended ruling must be filed with the
Clerk of the Court within fourteen (14) days of being served
with order.  See Fed. R. Civ. P. 72(b)(2).  **Failure to object
within fourteen (14) days may preclude appellate review.**  See 28
U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b); and D. Conn. L. Civ.
R. 72.2; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir.
1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566,
569 (2d Cir. 1995).

The Clerk's Office is instructed that, if any party appeals
to this Court the decision made after this remand, any
subsequent social security appeal is to be assigned to the
Magistrate Judge who issued the Recommended Ruling in this case,
and then to the District Judge who issued the Ruling that
remanded the case.

SO ORDERED at New Haven, Connecticut, this 24th day of
August 2015.


_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE


26